NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 1 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BRIAN WRIGHT, individually and as next friend of L.A.W., next friend of L.W., next friend of M.G.Z., and next friend of M.W., <br><br>      Plaintiffs - Appellants, <br><br> and <br><br> IRLANDA WRIGHT, <br><br>      Plaintiff, <br><br>   v. <br><br> GERARDO TALAMANTES; MEGHEAN FRANCISCO; DALE WOOLRIDGE, M.D., Medical Director, Southern Arizona Children's Advocacy Center, <br><br>      Defendants - Appellees, <br><br> and <br><br> SOUTHERN ARIZONA CHILDREN'S ADVOCACY CENTER, MARIE FORDNEY, Executive Director, Southern Arizona Children's Advocacy Center, MARIA GARRICK, Southern Arizona Children's Advocacy Center, NATALIE BARRAGAN DOJAQUE, Southern | No. 24-6668 <br><br> D.C. No. 4:21-cv-00257-JGZ <br><br> MEMORANDUM[*] |

---

     [*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Arizona Children's Advocacy Center, MORGAN RAU, Southern Arizona Children's Advocacy Center, SAHUARITA TOWN COUNCIL, named as The Town Council of The Town of Sahuarita, Arizona, THOMAS JOHNSTON, Detective, Sahuarita Police Department, MELINA CARRIZOSA, Police Officer, Sahuarita Police Department, CHRISTIN PELAYO, Detective, Sahuarita Police Department, JASON DEDMON, BRIAN MALDANADO, JOANA ENCINAS, JEANNETTE SHELDON, BETINA NORIEGA, MICHELLE OROZCO,

Defendants.

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, Chief District Judge, Presiding

Argued and Submitted September 19, 2025
Phoenix, Arizona

Before: COLLINS, MENDOZA, and DESAI, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge COLLINS.

Plaintiffs, minor child "L.A.W." and his father Brian Wright, appeal the district court's grant of qualified immunity for Dr. Dale Woolridge, a physician independently contracted by the Southern Arizona Children's Advocacy Center. Plaintiffs also appeal the grant of summary judgment for the Arizona Department of Child Safety ("DCS") investigator, Gerardo Talamantes ("Talamantes"), and his supervisor, Meghean Francisco ("Francisco"), on plaintiffs' judicial deception

24-6668

claims. We review de novo a district court's grant of summary judgment, including a grant based on qualified immunity. *Lowry v. City of San Diego*, 858 F.3d 1248, 1254 (9th Cir. 2017) (en banc); *Tarabochia v. Adkins*, 766 F.3d 1115, 1120 (9th Cir. 2014). We reverse the district court's grant of summary judgment on qualified immunity grounds for Dr. Woolridge, affirm the grant of summary judgment for Francisco, and reverse the grant of summary judgment for Talamantes.

1.     Qualified immunity must be "categorically available" for a private individual acting under color of state law to invoke it. *See Bracken v. Okura*, 869 F.3d 771, 776 (9th Cir. 2017) (quoting *Jensen v. Lane Cnty.*, 222 F.3d 570, 576 (9th Cir. 2000)). If qualified immunity is available, the private individual is immune from a § 1983 claim unless the plaintiff can prove a violation of "a clearly established constitutional . . . right." *See id.* (citation modified).

We need not decide whether qualified immunity is "categorically available" to Dr. Woolridge, because even assuming it is, he is not entitled to it. With the evidence at summary judgment construed in their favor, Plaintiffs have shown that Dr. Woolridge violated their constitutional rights by undressing L.A.W. and performing an investigatory forensic medical exam without parental consent or a court order. It is clearly established that a state actor violates a parent's Fourteenth Amendment rights by conducting a medical examination of a child without parental notice and parental consent or a court order, unless a "reasonable concern that

3                                    24-6668

material physical evidence might dissipate" or an "urgent medical problem" exists. *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000). It is also clearly established that a state actor violates a child's Fourth Amendment rights by conducting a significantly intrusive investigatory medical examination of a child without a warrant, parental notice and consent, or exigent circumstances. *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1164–67 (9th Cir. 2018). Because plaintiffs have presented sufficient evidence to show a violation of a clearly established constitutional right, Dr. Woolridge is not entitled to qualified immunity. We reverse the district court's grant of summary judgment, on qualified immunity grounds, for Dr. Woolridge.

2.  DCS supervisor Francisco is entitled to summary judgment on plaintiffs' judicial deception claim because plaintiffs offer no evidence demonstrating her "personal participation" in the alleged judicial deception. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor can be liable under § 1983 "for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* Here, plaintiffs point to no evidence establishing that Francisco directed or knew of any alleged judicial deception. We therefore affirm the district court's grant of summary judgment for Francisco.

3.  Plaintiffs proffer sufficient evidence to establish a genuine dispute of material fact as to whether (1) Talamantes deliberately or recklessly disregarded the

truth when asserting that "[L.A.W.] is at unreasonable risk of harm at his current home as the parent, guardian, or custodian deliberately harmed [him] and has caused serious or severe harm to him," and (2) but for Talamante's "deliberate falsehood or reckless disregard for the truth," the juvenile court would not have ordered L.A.W.'s removal.[1] *Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011).

The district court found that Talamantes's assertions did not amount to recklessly false statements, and that "Talamantes's opinion that the injuries suffered by L.A.W. were serious or severe was supported by Dr. Woolridge's findings." But a reasonable factfinder could conclude otherwise. Dr. Woolridge's findings noted that L.A.W. had multiple contusions to his inner thigh, hamstring, and buttock area, but he also stated that the contusions could be "consistent with accidental play" or "intentional injury." L.A.W. previously exhibited "little boy bruises" consistent with his age, which supports the possibility that the injuries were due to "accidental play" and not "intentional injury." Dr. Woolridge's report confirmed that L.A.W. did not have complaints about pain or discomfort. And none of L.A.W.'s injuries met the definition of "serious physical injury" referenced in the appendices of Pima County Protocols for the investigation of child abuse. Further, a reasonable factfinder could find that Talamantes acted recklessly or intentionally because the misrepresentation

---

[1] Plaintiffs' remaining allegations supporting their judicial deception claim fail to establish a genuine dispute of fact and thus do not survive summary judgment.

"bolster[ed] the case for probable cause, which suggests that the mistake[]" was "not the product of mere negligence." *Id.* at 388.

Lastly, the dependency court's probable cause finding rested on Talamantes's misrepresentation. Plaintiffs sufficiently show that this misrepresentation is material because if Talamantes's declaration was corrected, it would not have provided the court with a substantial basis for finding probable cause. *Id.* at 389. Therefore, "but for [Talamantes's] dishonesty," L.A.W.'s removal from his father's custody would not have occurred. *See id.* at 386.

In sum, because plaintiffs identify evidence raising a triable issue of fact as to their judicial deception claim against Talamantes, he is not entitled to summary judgment.

**AFFIRMED IN PART and REVERSED IN PART.**



*Wright, et al. v. Talamantes, et al.*, No. 24-6668

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concur in sections 1 and 2 of the memorandum disposition, which respectively (1) reverse the district court's grant of summary judgment to Dr. Dale Woolridge on qualified immunity grounds with respect to Plaintiffs' Fourth and Fourteenth Amendment claims arising from the intrusive forensic medical examination; and (2) affirm the district court's grant of summary judgment to Meghean Francisco with respect to Plaintiffs' judicial deception claims. But I would affirm the grant of summary judgment to Gerardo Talamantes on the judicial deception claims as well, and I therefore dissent from section 3.

For their judicial deception claim against Talamantes to "survive summary judgment," Plaintiffs "must 1) make a substantial showing of [Talamantes's] deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, [L.A.W.'s removal] would not have occurred." *Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011) (simplified). The majority concludes that Plaintiffs have met this standard *solely* with respect to the following statement that was included in the relevant applications: "[L.A.W.] is at unreasonable risk of harm at his current home as the parent, guardian, or custodian deliberately harmed [him] and has caused serious or severe harm to him." *See* Memo. Dispo. at 4–5. I agree with the majority that Plaintiffs' remaining alleged

instances of judicial deception "do not survive summary judgment," *see* Memo. Dispo. at 5 n.1, but in my view, this one fails as well.

Talamantes's characterization of L.A.W.'s injury as "serious" was accompanied by the predicate factual information on which that assertion was based. Specifically, Talamantes stated that L.A.W. had been observed as having a bruise on his leg "in a horizontal shape"; that L.A.W. had been initially "reluctant to disclose how he received it"; that L.A.W. subsequently stated that "he recently got in trouble and his stepmother hit him with a belt"; that he further stated that "his step-mother regularly uses physical discipline with him . . . in the home" and that she uses "objects" to discipline him, "including a belt and a Hot Wheels racing track"; that L.A.W.'s father and stepmother were both interviewed and they both "admit[ted] to using physical discipline on [L.A.W.]"; that L.A.W.'s stepmother admitted that she had "spanked" him and his brother the night before the injury was observed; and that Wright stated that the thigh mark might be from L.A.W.'s brother "smacking him with the Hot Wheels track."

Whether a bruise from being hit on the leg with a belt or a Hot Wheels track counts as "serious" is a debatable matter of opinion, but the state court was provided with the predicate facts on which that assertion was based, and it could reach its own judgment on that score. The characterization of the injury as "serious" is at best a "difference of opinion" and "at worst an exaggeration."

*United States v. Meek*, 366 F.3d 705, 716–17 (9th Cir. 2004).[1]  Given that

Talamantes provided the factual predicate for that evaluative characterization, I do

not see how a reasonable trier of fact could conclude that it was made with reckless

disregard for its truth.  *See id.*  And given that removing the characterization of the

described injury as "serious" from Talamantes's statement would not have

defeated probable cause, that evaluative comment was not material to the state

court's determinations.  *See Benavidez v. County of San Diego*, 993 F.3d 1134,

1148 (9th Cir. 2021) (stating that materiality turns on whether probable cause to

issue the order would still have existed if the asserted false statements were

removed or corrected).[2]

---

[1] There is no basis for the majority's suggestion that the phrase "serious or severe harm" in Talamantes's statement should be understood as referring to the statutory phrase of art "serious physical injury," which is used in Ariz. Rev. Stat. § 8-801(34) (2020) and in the Pima County Protocols' description of "criminal conduct allegations."  That statutory phrase uses a much narrower definition than the colloquial understanding of the term "serious" and is limited to injuries such as those involving risk of death, disfigurement, significant pain, or impairment of an organ or limb.  *Id*.  The narrowness of that definition is not surprising given that, if it is met, the statute authorizes immediate removal *without a court order* (if it is also likely there will be further serious harm before a removal order may be obtained), *see id*. § 8-821(K)(2) (2020).  There is no reasonable likelihood that the state court construed Talamantes's colloquially worded phrase as denoting "serious physical injury" in the narrow sense that might have justified immediate removal, and the factual predicate supplied by Talamantes (which manifestly did not meet that definition) further refutes any such suggestion.  L.A.W. was removed here under a broader provision authorizing court-ordered removal in cases involving "abuse or neglect."  *Id*. § 8-821(B) (2020).

[2] To the extent that the majority relies on Wright's alternative explanation that the

3

For these reasons, I would affirm the grant of summary judgment to Talamantes in full. To the extent that the majority does otherwise, I respectfully dissent from that portion of its judgment.

---

injury may have been accidentally caused by roughhousing between the children, *see* Memo. Dispo. at 5, Talamantes's statement is not false or misleading given that it mentioned that point. Moreover, probable cause does not require elimination of all other competing possibilities, and the facts contained in the statement amply establish probable cause that the injury was caused by L.A.W.'s stepmother.

4